IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

EDWARD LEE TERRY,                    )
                Petitioner,        )
                              )
v.                                   )
                              )        7:03-CV-199-R
NATHANIEL QUARTERMAN,[1] Director,   )
Texas Department of Criminal Justice, )
Correctional Institutions Division,   )
                Respondent.       )

MEMORANDUM OPINION AND ORDER

Came on to be considered the papers and pleadings filed in this action and the Court finds and orders as follows:

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by an inmate confined in the Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas.  On February 7, 2001, upon a plea of not guilty, Edward Lee Terry was tried by jury and convicted for the offense of possession of a controlled substance, methamphetamine.  *First Amended Petition p. 1 ¶¶ 1-6 (hereinafter "Petition p.___ ."); State v. Terry, No. 08120 (90th Judicial District of Young County, Texas).*  His sentence was assessed at thirty-years confinement.  *Petition p. 1 ¶ 3.*  Petitioner filed a direct appeal and, on March 14, 2002, his conviction was affirmed.  *Petition p.1 ¶¶ 8 & 9; Terry v. State*, No. 02-01-098-CR (Tex. App. – Ft. Worth 2002, pet. ref'd.).  Terry's petition for discretionary review was refused on July 31, 2002. *Terry v. State, P.D.R. No. 0829-02.*  He filed two

---

[1] Effective June 1, 2006, Nathaniel Quarterman was named Director of the Texas Department of Criminal Justice, Correctional Institutions Division.  The caption of this case is being changed pursuant to Fed. R. Civ. P. 25(d).

state applications for habeas relief without success. *Ex parte Terry*, Apps. No. 23,636-02 & 23,636-03.

In support of his Petition, Terry presents the following grounds for relief:

1.      During trial, the prosecutor unlawfully used statements made by Petitioner;

2.      Petitioner was denied the right to participate in the jury selection process;

3.      Denial of the right to an impartial jury because the Court refused to change venue;

4.      Insufficient evidence to support the conviction;

5.      The jury charge impermissibly eased the prosecution's burden of proof, and:

6.      Ineffective assistance of counsel.

*Petition pp. 3-7; Petitioner's Memorandum of Law pp. 2-17.*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act"), Pub. L. 104-132, 110 Stat. 1214, under which we now have a heightened standard of review in federal habeas corpus proceedings. Title I of the Act substantially changed the way federal courts handle such actions. The AEDPA applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063 (1997). Petitioner filed the instant petition after the effective date of the AEDPA. Therefore, Title I of the Act applies to his petition.

The AEDPA provides in pertinent part:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

      (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C.A. § 2254(d) (West 2003).

Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 531 U.S. 1002, 121 S.Ct. 508 (2000). Under § 2254(d)(2), the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court (1) unreasonably applies the correct legal rule to the facts of a particular case or (2) it unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407, 120 S.Ct. at 1520. The standard for determining whether a state court's application was unreasonable is an objective one. This standard of review applies to all federal habeas corpus petitions which, like the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Resolution on the merits in the habeas corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Upon a finding of state court compliance with the "contrary to" clause of 28 U.S.C. § 2254(d)(1), federal courts give deference to the state court's findings unless such findings violate the "unreasonable application" clause of 28 U.S.C. § 2254(d)(2). *Chambers*, 218 F.3d at 363. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001 (2001). The resolution of factual issues by the state court are afforded a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771 (1981). Absent such evidence, the presumption of correctness is applied provided that the state court findings are evidenced in writing, issued after a hearing on the merits and are fairly supported by the record. *E.g., Burden v. Zant*, 498 U.S. 433, 111 S.Ct. 862, 864 (1991); *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994), *cert. denied*, 513 U.S. 1137, 115 S.Ct. 959 (1995); 28 U.S.C. § 2254(d).

The facts of this case were recited by the Second Court of Appeals as follows:

> On January 20, 2000, law enforcement officers executed a search warrant at [Edward Lee Terry's] home. The officers found two baggies containing 3.5 grams of methamphetamine and appellant's wallet in a pair of men's jeans and a syringe in the master bedroom that contained 0.94 grams of methamphetamine. In a trailer adjacent to the home, the officers discovered a glass jar containing a brown powdery residue that was later determined to contain methamphetamine.

*Terry v. State*, No. 02-01-098-CR (Tex. App. – Ft. Worth 2002, pet. ref'd.).

Petitioner first claims that the prosecutor engaged in misconduct and, at trial, unlawfully used statements previously made by Petitioner. *Petition p. 3.* Terry states that, when he was confined in the Young County Jail awaiting trial, a guard escorted him to the Sheriff's office where a reporter from the Dallas Morning News was waiting, hoping to speak with him about drug use in the

community for an article he was writing.  *Id.*  Terry claims that the Young County District Attorney, who was also present, promised him that nothing he said to the reporter would be used against him at trial.  *Id.*  He was also told that his attorney had given his okay for the interview and that the article would not be published until after the trial was over.  *Id. p. 4.*  Terry claims that the District Attorney, who would be prosecuting the case, told him that any information he could give the reporter would help the community and that it would help Petitioner's case by showing that he was making an effort to help the community.  *Petitioner's Memorandum of Law pp. 2-3.*  Petitioner gave the interview.  *Id.*

Terry claims that the story was published shortly before his trial and that, during the trial, the prosecutor "constantly and repeatedly referred to the interview, implying that it was a 'confession' and that [Terry] admitted to being the 'meth-chief' and completely using what [Terry] thought was protected information against [him] during trial."  *Petition p. 4.*  Terry maintains that the prosecutor tricked him into providing incriminating information, failed to give him *Miranda*[2] warnings and violated his Fifth Amendment right against self-incrimination and Fourteenth Amendment right to due process of law.  *Petitioner's Memorandum of Law pp. 4-7.*

In the context of a habeas proceeding, alleged prosecutorial misconduct during a state criminal trial is reviewed to determine whether it "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process."  *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir. 1996)); *accord Greer v. Miller*, 483 U.S. 756, 765 (1987).  To warrant habeas relief, improper conduct by a state prosecutor must

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

be so prejudicial that it rendered the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *See e.g., Greer*, 483 U.S. at 765; *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000); *Barrientes*, 221 F.3d at 753. "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes*, 221 F.3d at 753 (quoting *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992)). "A prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984)). Comments that are simply "undesirable or even universally condemned" do not, for those reasons alone, constitute a due process violation. *Barrientes*, 221 F.3d at 753 (quoting *Darden*, 477 U.S. at 181); *see Dowthitt*, 230 F.3d at 755.

The record reveals that Petitioner testified during his trial. *Statement of Facts Vol. 3 pp. 187-222 (hereinafter "SF Vol. ___ p. ___.").* On cross examination, the prosecutor asked Terry about an interview he had with Scott Parks, the Dallas Morning News reporter. *Id. at p. 210.* The prosecutor apparently used the article to refresh Terry's memory about what he had said during the interview. *Id. at pp. 212-13.* Terry admitted to giving the interview but stated that he had lied to Parks and that is was just "[s]omething to build [him] up." *Id. at p. 212.*

The prosecutor's cross examination involving the newspaper article dealt with Terry's statements to the reporter regarding his involvement in manufacturing methamphetamine which

appears to have been the topic of the article.[3]   During the trial, Terry conceded that he was left alone

with the reporter during the interview, which he agreed to give.  *Id. at p. 220.*   This Court notes that

Terry was convicted of possession of methamphetamine, not the manufacturing or sale of

methamphetamine.  To the extent, if any, that the prosecutor promised not to use information given

to the reporter by Terry, the Court notes that Terry was not charged with the manufacture or

distribution of methamphetamine, even though he apparently admitted those activities to the

newspaper reporter.  *Ex parte Terry*, App. No. 23,636-02 pp. 17-18.  Terry was charged only with

possession of methamphetamine and the record reflects that the evidence against him on that charge

was overwhelming.   Terry even admitted in his testimony that he had possessed and used

methamphetamine in the past.  *SF Vol. 3 pp. 211-213.*   Accordingly, the Court finds that, to the

extent if any, the prosecutor should not have elicited Terry's testimony about information contained

in the newspaper article during cross examination, his actions had little or no prejudicial effect in

light of the evidence against Terry on the charge of possession.  *See United States v. Wise*, 221 F.3d

140, 153 (5th Cir. 2000).   Terry is not entitled to relief on this ground.

    Petitioner next claims that he was denied the right to participate in the jury selection process.

*Petition p. 4.*  Specifically, Terry argues that the trial court denied him the right to exercise his

peremptory strikes.  He states that, after the *voir dire* process had whittled the jury panel down to

approximately 27 people, he, his mother and his attorney went to another room with the list of

people remaining.  When they returned to the court room, 12 people were sitting in the jury box and

---

    [3] A copy of the article has not been provided to the Court and apparently was not admitted into evidence in the criminal trial.

the judge said, "here is your jury." *Memorandum in Support of Petition p. 7.* Terry states that his

attorney objected and explained that they had not participated in the selection of the jury. *Id.* He

claims that he and the district Attorney approached the bench and had a discussion with the judge,

after which, his attorney returned and said, "We should go with these jurors, it's as good as we're

going to get anyway." *Id.*

Here Terry has failed to present a claim of constitutional magnitude. "[U]nlike the right to

an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal

constitutional dimension." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000). Moreover,

the record in this case does not support Terry's allegation. At the conclusion of *voir dire*, the court

stated, "Go make your cuts." *SF Vol. 1 p. 81.* Approximately twenty minutes later, court

reconvened and the jurors were seated one-by-one as the judge called their names. *Id.* The record

reflects that, after the jury was seated, there was a bench conference initiated by the presiding judge.

*Id. at pp. 81-82.* However, there was no objection to the jury made on the record by Petitioner's

attorney. *Id.* Petitioner has not provided affidavits or any other evidence to support this ground for

relief. Additionally, he has failed to identify which, if any, of the jurors that he intended to strike

were seated on the jury and how this denied him the right to a fair and impartial jury. Terry is not

entitled to relief on this ground.

In his third ground for relief, Terry claims that he was denied the right to an impartial jury

because the Court denied his motion for a change of venue. *Memorandum in Support of Petition*

*p. 10.* Terry argues that, because the Dallas Morning News article containing his statements

regarding his purported involvement with methamphetamine was published before trial and because

"the jurors probably viewed ... the article," he could not get a fair and impartial jury in Young County, Texas. *Id.*

An inmate seeking to have his conviction overturned on the ground that he was denied a fair and impartial jury due to adverse pretrial publicity ordinarily must demonstrate actual, identifiable prejudice attributable to that publicity on the part of members of the jury. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *United States v. Capo*, 595 F.2d 1086, 1090 (5th Cir. 1979); *Hale v. United States*, 435 F.2d 737, 746-47 (5th Cir. 1970). A criminal defendant is not entitled to trial by a panel of jurors ignorant of the facts surrounding his case. *Capo*, 595 F.2d at 1090 (citing *Irvin*, 366 U.S. at 722-23). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* However, actual bias on the part of jurors may be presumed when the defendant produces evidence of pervasive community prejudice in the form of highly inflammatory publicity or intensive media coverage. *Capo*, 595 F.2d at 1090 (citing *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975), *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966), *Estes v. Texas*, 381 U.S. 532, 542-43 (1965) and *Pamplin v. Mason*, 364 F.2d 1, 4-5 (5th Cir. 1966)). "A defendant's right to a fair trial is violated only if he shows that the trial atmosphere was utterly corrupted by press coverage." *U.S. v. Lipscomb*, 299 F.3d 303, 344 (5th Cir. 2002) (internal quotations omitted).

Terry is not entitled to relief on this ground. He has not shown highly inflammatory press coverage, that the trial atmosphere was utterly corrupted or that any juror actually read the newspaper article and was prejudiced by it. His conclusory allegations with regard to media coverage affecting his jury do not raise a colorable basis for habeas corpus relief. *See Ross v.*

*Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).  "Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).

Next, Terry alleges that there was insufficient evidence to support the conviction. *Petition p. 5.* Specifically, Terry argues that Eddie Dickie, a chemist for the Texas Department of Public Safety, testified about a report dealing with the weight of the drugs which was prepared by another chemist, Don Taylor. *Id.* Petitioner maintains that his attorney repeatedly objected to the testimony as hearsay. *Id.* He argues that, because the testimony was hearsay, the state failed to prove the weight of the drugs which was an element of the offense. *Id.*

Errors of state law, including evidentiary errors, are not cognizable in habeas proceedings as such. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80 (1991).  A state court's evidentiary ruling presents a cognizable habeas claim only where it runs afoul of a specific constitutional right or it renders the trial fundamentally unfair. *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993) (citing *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985)), *cert. denied*, 510 U.S. 1025, 114 S.Ct. 637 (1993).  Fundamental unfairness may occur where certain testimony, erroneously admitted, plays a crucial, critical and highly significant role in the trial. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977 (1993).

Contrary to Petitioner's assertions, the testimony by Eddie Dickie regarding the weight of the drugs was admissible in Texas. *See* Tex. R. Evid.. 703 (West 2001); *Martinez v. State*, 22 S.W. 3d 504, 507-08 (Tex. Crim. App. 2000). An expert's testimony at trial can be based upon a report prepared by someone else, even if the report itself is inadmissible. *Id.* Dickie testified that the weight of the controlled substance was within the amount alleged in the indictment. *SF Vol. 3. pp. 145 & 152.* Additionally, the arresting officer testified that two clear plastic bags and a syringe found in Petitioner's bedroom contained more than 4 grams of methamphetamine, the minimum amount alleged in the indictment. *Id. at p. 23.* Therefore, the evidence was properly admitted and sufficient to prove an element of the offense. Terry is not entitled to relief on this ground.

In his final two grounds for relief, Terry claims that (1) the jury charge impermissibly eased the prosecution's burden of proof and (2) he was denied effective assistance of counsel at trial. Respondent argues that these two grounds for relief are procedurally barred from federal court review. *Respondent's Answer pp. 6-8.*

Federal courts may not review a state court decision that rests on an adequate and independent state procedural default, unless the habeas petitioner shows (1) cause for the default and actual prejudice resulting from the alleged violation of federal law or (2) demonstrates that the failure to consider his federal claim will result in a fundamental miscarriage of justice. *E.g. Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000); *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997); *Harris v. Reed*, 489 U.S. 255, 262 (1989). "[T]he fundamental miscarriage of justice exception is confined to cases of actual innocence, where the petitioner shows, as a factual matter, that he did not

commit the crime of conviction." *Smith*, 216 F.3d at 524 (quoting *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).

A review of the state records in the case at bar reflects that Terry failed to properly present these two grounds for relief to the Texas Court of Criminal Appeals. *See Petition for Discretionary Review, Terry v. State, No. 829-02 (Tex. Crim. App. 2002) (petition refused); Ex parte Terry*, App. No. 23,636-02 (pp. 7-8 & 11-15). Terry presented his ineffective-assistance-of-counsel claim in his second state application for habeas relief. However, that application was dismissed pursuant to Texas Code of Criminal Procedure art. 11.07 § 4 for abuse-of-the-writ. *Ex parte Terry*, App. No. 23,636-03 at Cover. Therefore, Terry's ineffective-assistance-of-counsel claim is procedurally barred from federal court review. Terry has not presented his jury charge claim to the Texas Court of Criminal Appeals.

If a petitioner has not fully exhausted state remedies but the state court would now find the claim procedurally barred, there has been a procedural default for purposes of federal habeas relief. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Were this Court to require petitioner to present his jury charge claim to the Texas Court of Criminal Appeals in a third art. 11.07 habeas application, the application would be subject to dismissal under the Texas abuse-of-the-writ doctrine.

Texas Code of Criminal Procedure art. 11.07 § 4 embodies the state habeas abuse-of-the-writ doctrine. The statute provides as follows:

Sec. 4. (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

-12-

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

(b) For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

(c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

Tex. Code Crim. Proc. Ann. art. 11.07 § 4 (West 2006). The Texas abuse-of-the-writ doctrine "represents an adequate state procedural bar for purposes of federal habeas review." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997), *cert denied*, 523 U.S. 1139, 118 S.Ct. 1845 (1998). This has been well established law in the Fifth Circuit since 1995. *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 515 U.S. 1153, 115 S.Ct. 2603 (1995). In the case at bar, Petitioner has failed to establish cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or that failure to consider this ground for relief will result in a fundamental miscarriage of justice. Therefore, Petitioner's grounds for relief No. 5 & 6 above are denied as procedurally barred.

For the foregoing reasons, IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

The Clerk of Court shall transmit a copy of this Order to Counsel for Petitioner and to Counsel for Respondent.

SO ORDERED this 20th day of September, 2006.

JERRY BUCHMEYER
UNITED STATES DISTRICT JUDGE